1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

BRIDGETTE J. HUARD-HIGGINS,

Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

Defendant.

No.  1:14-CV-03029-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

13    Before the Court are the parties' cross-motions for summary judgment, ECF

14   Nos. 12 & 16.  Thomas Bothwell represents Bridgette J. Huard-Higgins

15   ("Plaintiff" or "Claimant"), and Special Assistant United States Attorney Daphne

16   Banay represents Defendant Commissioner of Social Security (the

17   "Commissioner"). Plaintiff brings this action seeking judicial review, pursuant to

18   42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her

19   application for Disability Insurance Benefits ("DIB") and Supplemental Security

20   Income ("SSI") under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

434 & 1381-1383F . After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court grants Defendant's Motion for Summary judgment, and directs entry of judgment in favor of Defendant.

## I.    Jurisdiction

Plaintiff filed concurrent applications for DIB and SSI on January 4, 2011. Tr. 192-205. Plaintiff's application was initially denied on July 26, 2011, Tr. 127-130, and on reconsideration on September 7, 2011. Tr. 134-144. Plaintiff filed a written request for hearing on September 13, 2011. Tr. 146-147. On October 11, 2012, Administrative Law Judge ("ALJ") Laura Valente held a video hearing in Seattle, Washington. Tr. 31-74. On November 7, 2012, the ALJ issued a decision finding Plaintiff ineligible for SSI and DIB payments. Tr. 14-25. The Appeals Council denied Plaintiff's request for review on January 22, 2014, Tr. 1-3, making the ALJ's ruling the "final decision" of the Commissioner. Plaintiff timely filed the present action challenging the denial of benefits, and accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering

claimant's age, education, and work experience, engage in any other substantial

gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled within the meaning of the Social

Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

*Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial

gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

activity is defined as significant physical or mental activities done or usually done

for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.   Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Plaintiff was 39 years old as of her alleged onset date of disability. Tr. 192. Plaintiff has a high school education, plus approximately six years of college education. Tr. 38. Her past relevant experience includes work as a social services coordinator, a social worker, an eligibility worker, an adult education teacher, and a banquet server. Tr. 23.

Plaintiff alleges she is unable to work due to physical and mental impairments, including gastrointestinal problems, fibromyalgia, post-traumatic stress disorder ("PTSD"), depression, and anxiety. Tr. 35-38. Plaintiff reports a history of abuse in childhood and adulthood that has resulted in sleep disorders. Tr. 37.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not disabled under the Act and denied her SSI and DIB applications, which were filed on January 4, 2011. Tr. 14-25.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 27, 2010, her alleged onset date. Tr. 16 (citing 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).

**At step two**, the ALJ found Plaintiff had the following severe impairments: gastroparesis, contusions secondary to a motor vehicle accident, affective disorder, and anxiety disorder. Tr. 16-17. (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). Tr. 28.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1 (the "Listings"), 416.925, and 416.926 . Tr. 17.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

At **step four**, relying on the vocational expert's testimony, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except to perform tasks that involve about six hours of sitting and about six hours of standing/walking in an eight hour day.  Tr. 19.  The ALJ found Plaintiff able to occasionally climb ladders, ropes, and scaffolds, and she can frequently kneel; however, she cannot experience concentrated exposure to heat or cold, vibration, or workplace hazards. *Id.* The ALJ found Plaintiff could sufficiently concentrate, understand, remember, and carry out simple, routine tasks and detailed tasks during two-hour increments with customary breaks. *Id.*  She was also found able to interact occasionally with supervisors and the general public. *Id.*

Thus, the ALJ concluded that Plaintiff is capable of performing past relevant work as a social services coordinator, a social worker, an eligibility worker, an adult education teacher, and a banquet server because the work does not require the performance of work related activities precluded by Plaintiff's residual functional capacity. Tr. 23.

At **step five**, and in the alternative, the ALJ also found that after considering her age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. Tr. 24. *///*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

# VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 12. More specifically, Plaintiff alleges that the ALJ erred by: (1) improperly rejecting the opinion of Plaintiff's examining medical providers; (2) failing to conduct an adequate step four analysis; and (3) failing to meet her step five burden to identify specific jobs, available in significant numbers, which Plaintiff could perform in light of her specific functional limitations. ECF No. 12 at 7.

# VII.   Discussion

## A. The ALJ Properly Rejected the Opinions of Plaintiff's Treating and Examining Medical Providers.

### 1. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, who actually treat the claimant; (2) examining providers, who examine but do not treat the claimant; and (3) non-examining providers, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id.* at 803-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not

be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than her own conclusions and explain why she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**2.  The ALJ provided specific and legitimate reasons for rejecting the providers' opinions based on substantial evidence in the record.**

The opinions at issue in this review include two treating physicians, Drs. Lindgren and Warninger; one examining physician, Dr. Torres-Saenz; one examining nurse practitioner, Ms. Hoeniges; and non-examining state medical and psychological experts. The opinions regarding Plaintiff's ability to perform relevant work are contradictory. Thus, the "specific and legitimate" standard applies.

**a.  The opinions of Drs. Lindgren and Warninger.**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

1    Two of Plaintiff's treating physicians, Dr. Lindgren and Dr. Warninger,

2  provided opinions that they do not believe Plaintiff is capable of performing any

3  work on a routine, continuous, and sustained basis. TR. 581, 591. The ALJ based

4  her rejection of these opinions because they are inconsistent with the medical

5  record and because "the question of whether an individual is disabled (or able to

6  work) is outside the medical realm." Tr. 22.

7    Further, the opinions in controversy were the result of questionnaires

8  provided to the physicians by Plaintiff's attorney.  Tr. 580-81, 590-91. The

9  questionnaires did not provide explanations for the opinions, but the doctors were

10  limited only to check a box indicating the level of work they believed the Claimant

11  was capable of performing. *Id.* The ALJ was unpersuaded by these questionnaires

12  not only because they lacked elaboration, but because they were inconsistent with

13  the medical records.

14    In her ruling, the ALJ pointed to multiple instances in the medical record

15  and testimony of Plaintiff and her mother at the hearing that demonstrate Plaintiff's

16  ability to manage multiple physical, social, and mental functions. These included:

17  grocery shopping, light household chores and meal preparation, caring for her

18  personal hygiene, picking her son up from school, attending his school plays,

19  writing, scrapbooking, and working out at a gym. Tr. 20-22. Based on these

20

activities, the ALJ found that the Claimant was reasonably able to do light work because medication allowed her to manage a variety of daily affairs. Tr. 22.

The ALJ also noted instances where the doctors' own records contradicted the opinion that Plaintiff was unable to perform any type of regular work. For example, in an August 2012 report, Dr. Lindgren noted the Claimant's medication regimen enabled her to function during the day with regular breaks. Tr. 471. This information was particularly persuasive to the ALJ, who also noted that this was contrary to the Claimant's allegation that she must spend several hours lying down per day. Tr. 21.

To the extent that there is more than one rational interpretation of the record, the ALJ's findings must be upheld when, as here, they are supported by reasonably drawn inferences. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"). The ALJ cited to specific and legitimate evidence in the medical record to properly explain her decision to reject the opinions of Drs. Lindgren and Warninger that the Claimant was unable to perform any consistent work.[1]

---

[1] The ALJ's assertion that the providers cannot give opinions on the ultimate issue of disability is inaccurate, *see Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998), but because the ALJ provided specific and legitimate reasons supported by substantial evidence on the record to reject the opinions, this error was harmless and further explanation is unnecessary.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

b. **Dr. Torres-Saenz' opinion.**

Plaintiff asserts that the ALJ erred when she gave partial weight to the assessment of examining psychologist Dr. Torres- Saenz.  ECF No. 12 at 15. However, in her ruling, the ALJ pointed to multiple examples in the record and also explained that Dr. Torres-Saenz' opinion "appears to rely uncritically on the claimant's own report." Tr. 22.

While Dr. Torres-Saenz does note some physical and mental limitations, his records generally demonstrate Plaintiff's ability to function. Tr. 347-352. In his report, Dr. Torres-Saenz found Plaintiff to be independent in self-care and able to manage her own finances. Tr. 347-349. Plaintiff showed no memory or concentration problems during testing. Tr. 349. Dr. Torres-Saenz noted that she had "some difficulty" finishing her daily activities in a timely manner, but she was able to complete tasks. Tr. 350.  The ALJ also took special note of the records from Dr. Torres-Saenz that reflect the Claimant's ability to concentrate on hobbies, such as writing and scrapbooking. Tr. 21; 350.

The ALJ also pointed to the contradictory findings of Dr. Lindgren that the Claimant's medication allowed her to "generally function during the day," and that both the Claimant and her mother testified that she "generally finishes what she starts." *Id.* This contradicts Dr. Torres-Saenz' opinion that Plaintiff is unable to perform any work.

1    In her ruling, the ALJ provided specific and legitimate reasons that is

2  substantiated by the record to give only partial weight to Dr. Torres-Saenz' opinion

3  that Plaintiff was unable to perform any work. The Court will not disturb the ALJ's

4  decision regarding Dr. Torres-Saenz' opinion.

5    **c. Ms. Hoeniges' opinion.**

6    Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993), an ALJ is

7  obligated to give reasons germane to "other source" testimony before discounting

8  it. "Other sources" include nurse practitioners. 20 C.F.R. §§ 404.1513(d),

9  416.913(d). Defendant concedes that the ALJ did not address or provide any

10  reasons to reject the opinion of Advanced Registered Nurse Practitioner

11  ("A.R.N.P.") Robin Hoeniges. ECF No. 16 at 14. Ms. Hoeniges opined that the

12  Claimant suffered from gastroparesis, had chronic pain and fatigue, could not sit

13  for extended periods of time, was unable to participate in work activities, and was

14  limited to sedentary work. Tr. 341-42. Defendant asserts this was harmless error

15  and insufficient to result in remand. ECF No. 16 at 14.

16    An error may be considered harmless where it "occurred during an

17  unnecessary exercise or procedure"; is non-prejudicial to the Plaintiff; is

18  considered irrelevant to the determination of non-disability; or if the reviewing

19  court can "confidently conclude" that no reasonable ALJ could have reached a

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

1    different disability determination if erroneously disregarded testimony was

2    credited. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

3        Reviewing the total record, the ALJ's omission of analysis of Ms. Hoeniges'

4    opinion, while improper, was also harmless. As detailed previously, the ALJ cited

5    numerous facts to support her decision to reject the opinions of Drs. Lindgren and

6    Warninger that the Claimant was unable to perform any work. Ms. Hoeniges'

7    opinion actually does qualify the Claimant to complete some work, at the

8    "sedentary" level. Tr. 341-42. The reasons provided to reject the opinions of the

9    treating physicians would be adequate to reject the opinion of Ms. Hoeniges, and

10   the failure to address her opinion was harmless error.

11   **B. The ALJ properly conducted a Step-Four analysis.**

12        Plaintiff asserts that the ALJ failed to properly conduct the step four analysis

13   by: (1) erring in the finding of Plaintiff's residual functional capacity ("RFC") by

14   failing to include all of Plaintiff's limitations; (2) failing to identify the specific

15   demands of Plaintiff's past relevant work and then failing to properly compare the

16   specific demands with her specific functional limits; and (3) failing to follow the

17   recommendations of the State's experts, even though the ALJ gave great weight to

18   their opinions. ECF No. 12 at 17-18.

19   **1. The ALJ properly considered all of the Claimant's limitations in her RFC**

20   **finding.**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

1    The ALJ found that the Claimant was capable of light work, as defined in 20

2    CFR §§ 404.1567(b) and 416.967(b) with some limitations. Tr. 19. The ALJ

3    considered all of the limitations mentioned in the Claimant's initial application,

4    including gastroparesis, fibromyalgia, PTSD, anxiety, and depression, as well as

5    injuries stemming from a motor vehicle accident that occurred after the initial

6    application. Tr. 20-21. The ALJ's determination of the RFC based on these

7    complaints was limited by the Claimant's credibility with regard to the intensity,

8    persistence, and limiting effects, particularly with regard to pain. *Id.*

9    A claimant's credibility regarding subjective pain or symptoms is analyzed

10   through a two-step process. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

11   2008). First, the claimant must produce objective medical evidence of an

12   underlying impairment or impairments that could reasonably be expected to

13   produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets

14   this threshold, and there is no affirmative evidence suggesting malingering, "the

15   ALJ can reject the claimant's testimony about the severity of her symptoms only

16   by offering specific, clear and convincing reasons for doing so." *Id.*

17   In weighing a claimant's credibility, the ALJ may consider many factors,

18   including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

19   reputation for lying, prior inconsistent statements concerning the symptoms, and

20   other testimony by the claimant that appears less than candid; (2) unexplained or

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**

1    inadequately explained failure to seek treatment or to follow a prescribed course of

2    treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273,

3    1284 (9th Cir.1996).

4        The first step was satisfied because the ALJ determined that Plaintiff had

5    medically determinable impairments that could be reasonably expected to cause

6    the alleged symptoms. Tr. 20. However, at the second step, the ALJ found the

7    Claimant to not be entirely credible.

8        The ALJ pointed to multiple, specific instances of inconsistency between the

9    record and Plaintiff's testimony.  In the hearing, Plaintiff stated that she could only

10   lift a gallon of milk with two hands, Tr. 52, yet she also acknowledged exercising

11   at a gym. Tr. 51. The ALJ noted the list of regular activities the Claimant is able to

12   do, which were corroborated by her medical records. *Supra* p. 9. Of particular

13   concern regarding credibility, the ALJ pointed to the inconsistency between

14   Plaintiff's testimony at the hearing that she must lay down for up to six hours per

15   day and her statements to Dr. Lindgren that she could function during the day with

16   her medication, despite occasional fatigue. Tr. 21.

17       Plaintiff also asserts error in the ALJ's RFC computation with reference to

18   her status-post shoulder arthroscopy. The ALJ found in her Step Two analysis the

19   injury was not likely to cause functional limitations beyond twelve months. Tr. 17.

20   Further, the record demonstrates Plaintiff had repeated visits to Dr. Lindgren

1  following the procedure that document numerous complaints, but the shoulder is

2  not mentioned. Tr. 470-78.[2] It is reasonable, based on the record, to conclude the

3  shoulder procedure does not alter the RFC finding made by the ALJ, regardless of

4  whether she specifically cited it in her Step Four analysis.

5  **2. The ALJ did not err in determining Plaintiff could perform past relevant**

6  **work.**

7        In reaching her decision, the ALJ relied on Dictionary of Occupational Titles

8  ("DOT") classifications and determined that the Claimant is able to perform past

9  relevant work as it is actually and generally performed. Tr. 23. Claimant argues

10  that the DOT was insufficient to determine whether she could perform the mental

11  demands of the past work and that "the DOT did not contain all of the mental

12  requirements of the past relevant work." ECF No. 19 at 8. However, Claimant

13  offers no examples of mental limitations or demands that would preclude her past

14  relevant work that were not addressed by the DOT.

15        The record indicates that Vocational Expert, Trevor Duncan, provided

16  testimony that the Claimant could perform her past relevant work as a social

17

18  [2] Plaintiff does not assign error regarding her status-post shoulder arthroscopy to the ALJ's finding at Step Three. As a result, any error in the ALJ's finding at Step Two is harmless, provided she considered functional limitations arising from that impairment when determining Plaintiff's RFC.

19  See 20 CFR §§ 404.1545(a)(2) & 416.945(a)(2) (requiring an ALJ to consider all medically determinable impairments when determining a claimant's residual functional capacity); see also *Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir.

20  2007) (holding that failure to consider an impairment at step two is harmless error where the ALJ includes limitations arising from that impairment in his or her determination of the claimant's residual functional capacity).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18**

services worker, a social worker, an eligibility worker, an adult education teacher, and a banquet server, as defined by the DOT. TR. 69-71.  Mr. Duncan formulated this opinion based on the hypothetical presented by the ALJ after calculating the Claimant's RFC. *Id.*

Further, Mr. Duncan's testimony refutes Plaintiff's argument that the ALJ disregarded the opinion of the State's non-examining experts on Plaintiff's ability to work, despite giving strong weight to the same opinions to determine her RFC. ECF No. 12 at 18.  The hypothetical posed to Mr. Duncan was created from the assessments provided by the State's experts. Tr. 69-71; 79-100. In her decision, the ALJ noted that she accepted Mr. Duncan's testimony as credible. Tr. 23.

The Court recognizes that the ALJ provides little explanation as to why she found Plaintiff could perform relevant past work, but the record demonstrates that there was sufficient evidence for such a finding. Further, if there was an error, the ALJ correctly proceeded in the alternative in step five, and the error would be harmless.

**C. The ALJ did not fail to meet her burden to identify specific jobs, available in significant numbers, which Plaintiff could perform in light of her specific functional limitations.**

The burden in step five shifts to the Commissioner to identify the specific jobs that exist in substantial numbers in the national economy that the claimant can perform despite the claimant's specific functional limitations. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). When a hypothetical posed to a vocational expert includes all the limitations that the ALJ finds credible and is supported by substantial evidence in the record, the ALJ's reliance on the testimony of the vocational expert is proper. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff argues that the Defendant failed to meet its burden because the vocational testimony the ALJ relied on was in response to an incomplete hypothetical. ECF No. 12 at 19. However, as discussed above, the ALJ properly considered the credibility of the Claimant and exclusion of her testimony about her limitations was not in error. Likewise, the ALJ properly rejected the opinions of Drs. Lindgren and Warninger that were inconsistent with the record and need not include those limitations in the hypothetical. The ALJ is only required to provide a RFC finding that is consistent with the medical record. *Turner v. Comm'r of Soc. Sec. Admin.,* 613 F.3d 1217, 1222-23 (9th Cir. 2010)*.* The hypothetical posed was modeled off the limitations provided by the State's experts that the ALJ found to be credible and consistent with the record. Tr. 22-23; 69-71; 79-100.

With regard to the ALJ's step five analysis, the Court finds that the ALJ made proper findings free from legal error and supported by substantial evidence in the record. As previously stated, to the extent that her step four findings were not specific enough to Plaintiff's past relevant work, any error is harmless because of the ALJ's proper step five analysis.

## VIII.  Conclusion

Based on the foregoing, the Court finds the Commissioner's decision is free of legal error and supported by substantial evidence. Therefore, Defendant's Motion for Summary Judgment is granted.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 23rd day of November, 2015.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge